1998 OK 4

**Teddy AYALA, Appellant,**

v.

**KEOTA MILL & ELEVATOR COMPANY, a corporation, Appellee.**

No. 86664.

Supreme Court of Oklahoma.

Jan. 20, 1998.

Rehearing Denied March 11, 1998.

Harry Scoufos and Thomas W. Condit, Sallisaw, for Appellant.

D. Lynn Babb and Kathleen J. Adler, Pierce, Couch, Hendrickson, Baysinger & Green, Oklahoma City, for Appellee.

WATT, Justice:

## FACTS AND PROCEDURAL BACKGROUND

¶1 In October 1991 plaintiff, Ayala, was a farmhand in the employ of the Gamble farm, owned by Ortho Gamble, Sr. Gamble Farm had bought fertilizer for its spinach crop from defendant, Keota Mill in Poteau, LeFlore County, Oklahoma. Keota Mill had agreed to load the fertilizer in two of its own bulk fertilizer trucks and lend the trucks to Gamble Farm so that Gamble Farm could apply the fertilizer to his spinach. Mike Gamble, and Ayala picked up the trucks from the Keota Mill on a Saturday and drove

about eight miles to a convenience store where they stopped and went in to get something to eat. When they returned one of the trucks, a yellow Ford, would not start. Instead of notifying Keota Mill that the truck would not start, Gamble and Ayala removed the air cleaner, "primed" the engine by pouring gasoline into the carburetor, and got the engine restarted. They then drove to Gamble Farm's field, where they were once again unable to get the truck started. Gamble and Ayala again tried to prime the engine. At first, Gamble poured the gasoline and Ayala tried to start the truck. When the truck would not start, Gamble and Ayala traded places, with Ayala pouring the gasoline and Gamble trying to start the engine. The truck backfired while Ayala was pouring the gasoline. The backfire started a gasoline fire, which badly burned Ayala. Ayala received a workers' compensation award, but his workers' compensation recovery was ultimately not an issue in the action against Keota Mill.

¶ 2   Ayala sued Keota Mill in the District Court of LeFlore County on December 5, 1994, after having previously filed and then dismissed a similar action in Haskell County, in September 1994. The case was tried on September 11 and 12, 1995.

¶ 3   There was no proof that the yellow Ford truck had ever stalled before the day of Ayala's accident. A former Keota Mill employee, Joe Wasson, testified that he had experienced "carburetor trouble," and had asked a Keota Mill mechanic to look at it, but there was no proof that the truck had ever actually failed to start before the day of Ayala's accident. Wasson admitted that the truck was operating appropriately when the Keota Mill mechanic inspected it, and that all he had ever had to do to start the truck was "pull the choke out ... and it would start."

¶ 4   Ayala introduced the testimony of a mechanic, Bill Dick, who testified that priming was a common method of getting a stalled engine restarted. Dick also testified that a properly maintained engine will not backfire.

¶ 5   The trial court had a record made of the parties' oral arguments on Keota Mill's motion for directed verdict. During the course of the argument, the trial court made clear its conviction that Keota Mill should have no liability because Gamble and Ayala undertook to work on a truck that they knew would not start. Despite the trial court's stated misgivings about Ayala's case, the court submitted the case to the jury, apparently without ever formally ruling on Keota Mill's motion for directed verdict. The jury returned a verdict for $300,000.00 with no reduction for Ayala' own contributory negligence, or Gamble's negligence. Keota Mill filed a renewed motion for directed verdict and a motion for judgment notwithstanding the verdict, which the trial court granted. Ayala appealed, and the Court of Civil Appeals, Division 3, affirmed, with one judge dissenting.

## DISCUSSION

### The Standard of Review

¶ 6   Title 12 O.S.Supp.1997 § 698 provides in material part:

> When a motion for a directed verdict made at the close of all of the evidence should have been granted, the court shall, at the request of the moving party, grant judgment in the moving party's favor, although a verdict has been found against the moving party ...

Under § 698, if Keota's motion for directed verdict should have been granted then the trial court correctly entered judgment notwithstanding the verdict for it, although the jury found against Keota. We hold that the trial court should have granted Keota's motion for directed verdict, and correctly did grant its motion for judgment notwithstanding the verdict.

### A Bailor is Not Liable to A Bailee or a Third Party for Patent Defects in the Bailed Article nor for Injuries Caused by Use of the Bailed Article for a Purpose not Known by the Bailor to be Intended.

¶ 7   In the trial court and in his brief in chief Ayala argued, correctly, that the law of bailment applies to this case. He relied on *Bush v. Middleton*, 1959 OK 116, 340 P.2d 474, 477–78 for the proposition that the owner of a vehicle who permits another

to use the vehicle may be held liable to the bailee or a third party for death or damage caused by a defect in the vehicle. Ayala admitted that liability depends on the fact that the defect "was not known to the bailee." *Bush* 340 P.2d at 477–78.[1] In *Bush* a used car dealer loaned a car to a prospective buyer who struck the plaintiff when the car's brakes failed. Middleton claimed the brakes were not defective because they worked when pumped first. We held that a fact question existed as to whether the bailee-driver knew that the brakes were defective.

¶ 8   In its opinion the Court of Civil Appeals did not deal with the law of bailment. Instead, it discussed only the question of what sort of intervening cause is sufficient to break the chain of causation so as to relieve one guilty of negligence of liability. The Court of Civil Appeals held that the chain of causation was broken because Ayala poured a "cup full of gasoline in the carburetor," whereas the "act of priming" might have been foreseeable had a lesser amount of gasoline been poured into the carburetor. For the reasons discussed in the balance of this opinion, we reject the Court of Civil Appeals's analysis and hold that Keota Mill owed no duty to Ayala under the facts presented in this appeal.

¶ 9   On certiorari Ayala argues that there was not a supervening cause sufficient to insulate Keota Mill from liability. We need not deal with the proximate cause cases cited by Ayala, and relied on by the Court of Civil Appeals, because Keota Mill as a bailor had *no duty* to warn Ayala of the defect in the truck. As noted, none of the cases Ayala cited in his petition for certiorari, nor those relied on by the Court of Civil Appeals, dealt with the law of bailment.

¶ 10   We addressed a bailor's obligation to a third-party in *Lee Eller Ford, Inc. v. Herod*, 1960 OK 111, 353 P.2d 702. There defendant bailor had loaned a car to a prospective purchaser who ran out of gasoline. Plaintiff was injured when her car struck the bailed car while it was being towed, and plaintiff sued the bailor. We reversed the trial court

for having failed to grant the bailor's motion for directed verdict because "ordinarily bailor's liability may not be predicated on a defect in the vehicle *which arises following the bailment.*" [Emphasis added.] *Herod*, 353 P.2d at 704.

¶ 11   In *Moore v. City of Ardmore*, 1940 OK ——, 188 Okla. 74, 106 P.2d 515 we held that the bailor of a small boat was not liable to the plaintiff's decedent, who had rented the boat from the bailor. There, the boat capsized in a sudden storm and decedent drowned. We held that a bailor's obligation to his bailee does not allow the bailee to recover if the bailee is "indifferent and heedless of his own safety," and that neither the bailor nor the bailee may "substitute a supposed legal rule for their own faculties." Here, Gamble and Ayala were clearly "heedless of ... [Ayala's] own safety" and could easily have avoided Ayala's injury by using their "own faculties."

¶ 12   There are several cases from other jurisdictions where the foregoing rule has been applied to facts similar to those of this case. In *Brown v. Hudson*, 50 Tenn.App. 658, 363 S.W.2d 505 (1962) plaintiff's decedent was killed when he and fellow employees of the bailee of a dump truck undertook to lower the truck's apparently defective bed, which was stuck in the raised position. Defendant had loaned the truck to the plaintiff's decedent's employer for the purpose of removing debris from a construction site. The truck bed fell, killing decedent. Plaintiff sued the owner-bailor of the truck, claiming that the truck bed was in a defective and dangerous condition. The trial court directed a verdict for the defendant-bailor and the Tennessee Court of Appeals affirmed, saying:

> The condition of the truck of which complaint is made was as obvious to the bailee as to the bailor.... *There was no duty* upon the bailor to repair the truck except after notice, which, according to the undisputed facts, was not given before plaintiff's husband was injured.

[Emphasis added.] *Brown*, 363 S.W.2d at 510.

---

1.  The body of common-law bailments has been modified in some respects by the Legislature's adoption of Article 2A of the Uniform Commercial Code, 12A O.S.1991 §§ 2A–101, et seq., none of the provisions of Article 2A affects the rule of tort liability we apply in this case.

¶ 13   In *Blankenshop* [2] v. *St. Joseph Fuel Oil & Mfg. Co.*, 360 Mo. 1171, 232 S.W.2d 954 (1950) the Missouri Supreme Court held that the owner of a street sweeping machine was not liable to the bailee's employee for an injury caused by a defect, exposed chains and sprockets, that was obvious to the plaintiff, bailee's employee, who was injured while using the sweeper. The court held,

> Where the defect is known to or readily ascertainable by the bailee, *there is no duty* on the bailor to notify him as such notice would not be necessary for his protection. ·

[Emphasis added.]   *Blankenshop*, 232 S.W.2d at 958.

¶ 14   The Texas Court of Civil Appeals reached a similar result in *Moore v. Ellis*, 385 S.W.2d 261 (Tex.Civ.App.1964). A hydraulic cylinder on a tractor ordinarily used to raise and lower a disc was admittedly inoperable, so a three-point hitch had to be used to raise the disc. Because the ground was soft the tractor tipped over backward when the plaintiff used the three-point hitch, and he was injured. An accident of the sort that injured plaintiff would have been impossible had the hydraulic lift worked. The Court of Appeals set aside the trial court's judgment on a jury verdict and entered judgment for the bailor-defendant, holding that even if a bailor furnishes defective equipment, the bailor has *"no duty to act* if the bailee knows of the defect," and the bailor is liable for injuries occurring while using the bailed equipment only "while it is being used for purposes known by the bailor to be intended." [Emphasis added.] *Moore*, 385 S.W.2d at 265. The Texas court also said:

> ... if the bailee has knowledge of the defect and *uses the thing notwithstanding this knowledge,* he will be held to have waived his right to claim damages.

> The rule appears to be general and firmly established that where a bailee-plaintiff *voluntarily continues to use a defective machine after knowledge of the defect,* he cannot recover for injuries resulting from such defect. [Citations omitted.]

[Emphasis added.]   *Moore*, 385 S.W.2d at 266.

¶ 15   The similarity of the facts here to those in *Brown, Blankenshop,* and *Moore,* is irresistible. When Ayala and Gamble learned that the truck would not start Ayala was safe. Had Ayala and Gamble not undertaken to perform a dangerous and unauthorized priming operation on the stalled truck, Ayala could not have been injured. Thus, Keota Mill had no duty toward Ayala, after Gamble and Ayala discovered that the truck would not start. Ayala could not recover as a matter of law for injuries sustained as a result of his actions after he discovered the truck's defect.

¶ 16   The trial court should have granted Keota Mill's motion for directed verdict, and correctly granted Keota Mill's motion for judgment notwithstanding the verdict.

·CERTIORARI GRANTED, COURT OF CIVIL APPEALS OPINION VACATED, JUDGMENT OF THE TRIAL COURT AFFIRMED.

SUMMERS, V.C.J., and LAVENDER, SIMMS, OPALA and WATT, JJ., concur.

KAUGER, C.J., and HARGRAVE, J., concur in result.

ALMA WILSON, J., concurs in part, dissents in part.

HODGES, J., dissents.

---

**2.**   While the plaintiff's name is stated to be "Blankenshop" in the style of the South Western 2d Reporter, the body of the opinion reveals that the plaintiff's name was actually "Blankenship."